[No. F039609. Fifth Dist. June 14, 2002.]

In re ANGELA C., a Person Coming Under the Juvenile Court Law.
STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff
and Respondent, v.
MIRNA C., Defendant and Appellant.

COUNSEL

Mario de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael H. Krausnick, County Counsel, and Linda S. Macy, Deputy County Counsel, Plaintiff and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.**—Mirna C. appeals from an order terminating her parental rights (Welf. & Inst. Code, § 366.26) to her daughter, Angela.[1] She contends she received inadequate notice of the termination hearing and thus is entitled to per se reversal. On review, we find appellant received no notice of a continuance of the termination hearing. We hold the error, albeit a due process violation under *In re Phillip F.* (2000) 78 Cal.App.4th 250, 258-259 [92 Cal.Rptr.2d 693], is subject to the *Chapman* prejudice standard of harmless beyond a reasonable doubt.[2] Having reviewed the record under this standard, we conclude the error was harmless and we will affirm.

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].

## PROCEDURAL AND FACTUAL HISTORY

Given the limited nature of this appeal, we need only briefly summarize the history of these proceedings. In March 2000, the Stanislaus County Superior Court adjudged Angela, born in October 1999, a dependent child of the court and removed her from appellant's custody. Appellant consented to dependency jurisdiction based on her physical abuse of Angela. After approximately 12 months of unsuccessful reunification efforts, the court terminated services and set a section 366.26 hearing for July 19, 2001, to select and implement a permanent plan for Angela.

Respondent Stanislaus County Community Services Agency (the agency) personally served appellant with notice of the July 19th hearing in accordance with section 366.23. However, she did not attend the proceedings on that date. Due to a problem in providing publication notice to an alleged father, the court continued the section 366.26 hearing to October 9, 2001.[3] The record is silent regarding notice of the continued hearing date to appellant.

On the October 9th date, appellant again did not attend. Relying on the prior notice to appellant, the court found she received proper notice. None of the alleged fathers having appeared, the court proceeded on the matter and terminated parental rights.

## DISCUSSION

■ Parents are entitled to special notice of a section 366.26 hearing pursuant to section 366.23, which specifies in considerable detail the necessary contents, timing, and methods for service of the notice. (*In re Malcolm D.* (1996) 42 Cal.App.4th 904, 911-912 [50 Cal.Rptr.2d 148].) Not infrequently, however, the trial court may find it necessary to continue the section 366.26 hearing date. When that situation arises, parents remain entitled to notice of the continued hearing date. (*In re Phillip F., supra,* 78 Cal.App.4th at pp. 258-259; *In re Malcolm D., supra,* 42 Cal.App.4th at p. 913.)

Provided a parent has received notice of the original section 366.26 hearing date in compliance with section 366.23, renotice to *that* parent pursuant to the precise terms of section 366.23 is not necessary under certain circumstances to satisfy due process. (*In re Phillip F., supra,* 78 Cal.App.4th at pp. 258-259.) For example, if the parent who received the original notice is present in court when the trial court continues the hearing date, the

---

[3]Although the court had ordered notice by publication to multiple alleged fathers, there were typographical errors in the one of the published notices.

in-court notice is proper and satisfies the parent's due process rights. (*In re Malcolm D. supra,* 42 Cal.App.4th at p. 913.) By contrast, if that same parent fails to attend a properly noticed section 366.26 hearing, other proof of actual notice to the parent of the continued hearing date will suffice for due process purposes. (*In re Phillip F., supra,* 78 Cal.App.4th at p. 258.) In this regard, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (*Id.* at pp. 258-259.)

■ Here, although appellant received notice of the original section 366.26 hearing date in compliance with section 366.23, she did not attend court on the originally scheduled date and the record is silent as to any notice to her of the continued hearing date. As a consequence, at the continued hearing, the juvenile court could not properly find appellant received proper notice and proceed to terminate her parental rights.

Because resumption of the section 366.26 hearing without some proof of actual notice to appellant violated her due process rights (*In re Phillip F., supra,* 78 Cal.App.4th at pp. 258-259), the question arises: how does this court evaluate the error? Appellant contends the lack of notice is per se prejudicial error. Respondent does not address this issue.

In urging per se reversal, appellant relies on cases, none of which addresses, let alone answers, the question here. (See *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222 [110 Cal.Rptr. 144, 514 P.2d 1224]; *In re Anna M.* (1997) 54 Cal.App.4th 463 [62 Cal.Rptr.2d 831]; *Lyydikainen v. Industrial Acc. Com.* (1939) 36 Cal.App.2d 298 [97 P.2d 993].) At most, *In re Anna M.* alluded to but did not resolve the standard of prejudice question. Having found a section 366.23 error in notice, the *Anna M.* court noted the respondent argued, "without citation to illuminating authority, '[a]ny possible prejudice that might have resulted does not necessitate reversal.'" (*In re Anna M., supra,* 54 Cal.App.4th at p. 469.) The appellate court was "unpersuaded," stating: "[t]o the contrary, even assuming [appellant] must show prejudice in face of such a fundamentally flawed procedure, we have no trouble finding prejudice." (*Ibid.*)

Further, our research discloses a conflict in the cases that have reached the question of prejudice. We find neither side in this conflict, however, to be persuasive. The court in *In re Steven H.* (2001) 86 Cal.App.4th 1023, 1033 [103 Cal.Rptr.2d 649], assumed a notice defect could be evaluated on a *Chapman* standard of harmless beyond a reasonable doubt. In *In re DeJohn B.* (2000) 84 Cal.App.4th 100, 110 [100 Cal.Rptr.2d 649], the court ruled, without further discussion, a notice defect "mandated" reversal. Implicit,

though unstated, in each of these decisions is an acknowledgement that a notice defect amounts to constitutional error and is subject to at least a heightened *Chapman* standard of prejudice.

Confronted with constitutional error in dependency matters, other appellate courts have looked to the standards applied in criminal appeals, as explained in *Arizona v. Fulminante* (1991) 499 U.S. 279 [111 S.Ct. 1246, 113 L.Ed.2d 302]. (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 446 [48 Cal.Rptr.2d 691] [a violation of right to confront and cross-examine witnesses]; *In re Andrew S.* (1994) 27 Cal.App.4th 541, 547 [32 Cal.Rptr.2d 670] [a violation of the right to counsel]; *In re Amy M.*(1991) 232 Cal.App.3d 849, 868-869 [283 Cal.Rptr. 788] [another violation of witness-confrontation rights].) Persuaded by this approach, we have taken it and conclude, as explained below, that it is appropriate to review the error in this case under the *Chapman* standard.

■ Constitutional error as a general rule does not automatically require reversal. In determining the effect of "most constitutional errors," appellate courts can properly apply a *Chapman* harmless error analysis. (*Arizona v. Fulminante, supra,* 499 U.S. at p. 306 [111 S.Ct. at p. 1263].) In *Fulminante,* the Supreme Court cited a wide range of errors susceptible to harmless error analysis. According to the Supreme Court, "[t]he common thread connecting [those] cases is that each involved 'trial error'—error which occurred during the presentation of the case . . . ." (*Id.* at p. 307 [111 S.Ct. at p. 1264].) An error in the trial process itself does not require automatic reversal because a court may quantitatively assess such an error in the context of other evidence presented in order to determine whether the error was harmless beyond a reasonable doubt. (*Id.* at pp. 307-308 [111 S.Ct at pp. 1263-1264].) In applying harmless error analysis to these many different constitutional violations, the court explained the harmless error doctrine is "essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' " (*Id.* at p. 308 [111 S.Ct. at p. 1264].)

By comparison, "structural" error or a "structural defect[] in the constitution of the trial mechanism . . . affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself" defies analysis by a harmless error standard. (*Arizona v. Fulminante, supra,* 499 U.S. at pp. 309-310 [111 S.Ct. at p. 1265].) A structural error requires reversal without regard to the strength of the evidence or other circumstances. (*Id.* at p. 310 [111 S.Ct at p. 1265].)

The United States Supreme Court has found structural errors, however, only in a very limited class of cases: the total deprivation of the right to counsel at trial (*Gideon v. Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]), a biased judge (*Tumey v. Ohio* (1927) 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749]), unlawful exclusion of members of the defendant's race from a grand jury (*Vasquez v. Hillery* (1986) 474 U.S. 254 [106 S.Ct. 617, 88 L.Ed.2d 598]), denial of the right to self-representation at trial (*McKaskle v. Wiggins* (1984) 465 U.S. 168 [104 S.Ct. 944, 79 L.Ed.2d 122]), denial of the right to a public trial (*Waller v. Georgia* (1984) 467 U.S. 39 [104 S.Ct. 2210, 81 L.Ed.2d 31]), and erroneous reasonable-doubt instruction to jury (*Sullivan v. Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182]). (*Arizona v. Fulminante, supra,* 499 U.S. at pp. 309-310 [111 S.Ct at pp. 1264-1265].) With regard to such structural errors, *Fulminante* explained: " 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " (*Id.* at p. 310 [111 S.Ct at p. 1265].)

Here, we find the lack of notice of a continuance is in the nature of a trial error. To the extent structural error implicates the fundamental fairness of judicial proceedings, we reason the error in this case is not structural. (*Arizona v. Fulminante, supra,* 499 U.S. at p. 310 [111 S.Ct at p. 1265].) Appellant has had notice of these dependency proceedings from the outset, as well as the opportunity to be heard. Additionally, appellant received proper notice of the originally scheduled section 366.26 hearing date. The error at most affects the manner in which the court conducts the termination hearing in that it becomes an uncontested hearing. However, had the court proceeded on the originally scheduled hearing date, as it had every right to do with respect to appellant, that hearing too would have been uncontested in that appellant failed to attend the hearing as originally noticed or notify anyone as to her position. Also, given appellant's prior participation in the proceedings, as well as her election not to attend the originally scheduled termination hearing, we can quantitatively assess the error in the context of other evidence presented in order to determine whether the error was harmless beyond a reasonable doubt. (*Arizona v. Fulminante, supra,* 499 U.S. at pp. 307-308 [111 S.Ct. at pp. 1263-1264].)

Having reviewed the record under the *Chapman* standard, we find the failure to notify appellant of the continued termination hearing date was harmless beyond a reasonable doubt. The primary issue in a section 366.26 hearing is whether the dependent child is likely to be adopted. Here, it was undisputed throughout these dependency proceedings that Angela was a healthy youngster who was developmentally on track and had no apparent

emotional or mental problems. She had been in the same placement since March 2000 and was able to form emotional attachments. Furthermore, the agency's assessment of Angela's adoptability satisfied statutory requirements. We therefore find beyond a reasonable doubt that the error in notice was harmless as to the court's finding of Angela's adoptability.

Once the court finds the likelihood of adoption, termination of parental rights is the preferred permanent plan absent proof that termination would be detrimental to the child's best interests. (§ 366.26, subd. (c)(1); *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344 [63 Cal.Rptr.2d 562].) The court may find such detriment when a parent establishes that he or she has maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(A); *In re Jesse B.* (1992) 8 Cal.App.4th 845, 850-851 [10 Cal.Rptr.2d 516].) Here, the record shows that although appellant loved her child and visited her weekly in 2000, appellant figuratively gave up any effort to be a parent to Angela starting in early 2001. Appellant appeared under the influence of alcohol at a February visit, which was also scheduled to serve as a parent/child laboratory to evaluate appellant's parenting skills and her relationship with Angela. Appellant then missed the next visit and thereafter had no further contact with Angela. Under these circumstances, appellant stood no chance of prevailing on a detriment argument. Thus, we can likewise find beyond a reasonable doubt that the error in notice was harmless to any detriment claim.

One final note. In her reply brief, appellate counsel for the first time contests a prior dependency court order appointing a guardian ad litem for appellant. Appellate counsel speculates that the court denied appellant due process in making the appointment. Not only does counsel fail to offer any good cause for her delay, she fails to provide this court with an adequate record to assess her argument. On the record before this court, there is no showing that the court somehow erred in making the appointment.

DISPOSITION

The order terminating parental rights is affirmed.

Buckley, J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 2002.